IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 06-026 (CKK) |
| v. ) | |
| ) | |
| PETER R. TURNER, ) | Notice of Intent to Introduce Evidence |
| ) | Under Rule 404(b), Pre-Trial Motion to |
| LATANYA ANDREWS, and ) | Admit Such Evidence, and Memorandum |
| ) | of Law in Support |
| THELMA LEONARD, ) | |
| Defendants. ) | |
| _____ ) | |

GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE
UNDER RULE 404(b), PRE-TRIAL MOTION TO ADMIT SUCH EVIDENCE,
AND MEMORANDUM OF LAW IN SUPPORT

The United States of America, by and through its undersigned counsel, respectfully submits this notice, motion, and supporting memorandum of law to provide pre-trial notice to defendant Peter Turner of the general nature of evidence of other crimes, wrongs, or acts the government intends to introduce at trial pursuant to Fed. R. Evid. 404(b) and to obtain a pre-trial ruling that such evidence will be admissible on those grounds.  The trial of this matter is scheduled to commence July 24, 2006.

I.      The Indictment

On January 31, 2006, Peter R. Turner, LaTanya Andrews, and Thelma Leonard were indicted in this district in a three-count indictment charging each of them with conspiracy in violation of 18 U.S.C. § 371, and Andrews and Turner each with one count of bribery in violation of 18 U.S.C. § 201(b).  Andrews was a payroll technician for the Department of Veterans Affairs Medical Center (DVAMC), Turner was a volunteer driver for the DVAMC, and Leonard was an associate of Turner.  The indictment was unsealed on February 8, 2006.

The indictment alleges that Turner, Andrews, and Leonard conspired to file a forged Federal Employees Group Life Insurance (FEGLI) form falsely designating Turner as a one-half life-insurance beneficiary for Vester Mayo, an employee of the DVAMC, in Mayo's official personnel folder. Andrews allegedly used her position as an employee of the DVAMC to cause the forged FEGLI form to be included in Mayo's official DVAMC personnel folder. Leonard allegedly assisted the conspiracy by signing the forged beneficiary form as a signature witness knowing that it had not been signed by Mayo. Turner then filed a fraudulent claim with the FEGLI program when Mayo died, obtaining payment of approximately $20,500. In return for their loyalty and assistance in the scheme, Turner paid Andrews $1,000 from the proceeds of the fraudulent FEGLI claim, and later paid another $1,000 to Leonard and her husband, who is now deceased.

To obtain a conviction against each defendant on the conspiracy count, the government must prove that: (i) the defendant and at least one other person made an agreement to defraud the United States, to obstruct this investigation, or to commit the crime of mail fraud or bribery as charged in the Indictment; (ii) the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and (iii) one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the Indictment, in order to accomplish some object or purpose of the conspiracy. 18 U.S.C. § 371.

As to the bribery count against Turner, the government must prove each of the following elements: (i) that defendant Turner, directly or indirectly, corruptly gave, offered, or promised anything of value to a public official; and (ii) that he did so with intent to influence that public official in the performance of an official act or to influence that public official to commit or aid

2

in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of a fraud on the United States. 18 U.S.C. § 201(b)(1)(a) & (b).

The Government intends to introduce evidence that Turner (1) uttered forged checks drawn on Vester Mayo's bank account after her coma and death and (2) was convicted by general court martial of larceny and attempted bribery related to another forgery scheme. The evidence is relevant to establish Turner's modus operandi, plan, intent, motive, lack of mistake, identity, and knowledge of how to execute forgery schemes.

II.     Legal Standards for Admission of Other Crimes, Wrongs, or Acts

    A.     Rule 404(b): Other Crimes, Wrongs, or Acts Evidence

The United States intends to introduce evidence of other crimes, wrongs, or acts pursuant to Fed R. Evid. 404(b), which will be offered to show motive, intent, modus operandi, absence of mistake, plan, identity, opportunity, and knowledge.

Rule 404(b) provides, in pertinent part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). The rule permits the admission of extrinsic acts evidence unless its sole probative value is to show the criminal predisposition of the accused. United States v. Long, 328 F.3d 655, 661 (D.C. Cir. 2003). In reviewing evidence offered under Rule 404(b), the Court should treat the rule as one of inclusion, not exclusion. Huddleston v. United States, 485 U.S. 681 (1988); United States v. Lawson, 410 F.3d 735, 741 (D.C. Cir. 2005). The existence of similar wrong-doing tends to rebut the defense of inadvertence or accident by showing identity or common scheme or plan. United States v. Day, 591 F.2d 861, 873-74 (D.C. Cir. 1978); Lawson, 410 F.3d at 741 (addressing "identity" rationale, and noting that "similarities between

3

the offenses made it more likely that [the defendant] was one of the Riggs Bank robbers as well"); accord United States v. Greenwood, 796 F.2d 49 (4th Cir. 1986).

It is well established that evidence of other crimes, wrongs, or acts is admissible notwithstanding Rule 404(b) if it is not "extrinsic" to the offense charged. United States v. Allen, 960 F.2d 1055, 1058 (D.C. Cir.1992) (per curium). Evidence of other crimes, wrongs, or acts is not extrinsic if it is part of the same transaction or series of transactions as the charged conduct, if it is "inextricably intertwined" with the charged conduct, or if it is evidence "necessary to complete the story of the crime on trial." United States v. Badru, 97 F.3d 1471, 1474 (D.C. Cir. 1996). Such intrinsic evidence should be admitted subject only to the limits of relevancy under Rule 401 and the danger of unfair prejudice under Rule 403.

Finally, Rule 404(b) does not include the time-restraints of Rule 609(b), which governs admissibility of evidence of prior convictions to impeach a witness. See, e.g., Meacham v. United States, 115 F.3d 1488, 1491 (10th Cir. 1997) (evidence of offenses 30 years prior); United States v. Hadley, 918 F.2d 848, 850-51 (9th Cir. 1990) (15 years). Also, the other acts need not have occurred before the offense for which the defendant is charged. United States v. Gallo, 543 F.2d 361, 364-65 (D.C. Cir. 1976).

B.     Rules 401 and 403: Relevancy and Unfair Prejudice

Rule 401 defines what constitutes "relevant" evidence: it is "evidence having <u>any tendency</u> to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). The Rule 401 relevance threshold presents a low barrier to admissibility. To be admissible, evidence need only be "'worth consideration by the jury,' or have a 'plus value.'" United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997).

4

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  The Rule favors the admission of relevant evidence.  "Courts have characterized Rule 403 as an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." United States v. Meester, 762 F.2d 867, 875 (11th Cir. 1985) (citing cases).  Under the Rule, "unfair prejudice" refers to evidence that has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 (advisory committee's note).  Thus, "'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"  United States v. Cassell, 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 618 (5th Cir.1977)); see also United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979) (Rule 403 is "not designed to permit the court to 'even out' the weight of evidence, to mitigate a crime, or to make a contest where there is little or none").  Finally, any danger of unfair prejudice resulting from admission of evidence that is relevant to a non-character theory should be mitigated by cautionary instructions, rather than excluded.  United States v. Cassell, 292 F.3d 788, 796 (D.C. Cir. 2002).

III.    Application to the Evidence

The United States intends to introduce other crimes, wrongs, or acts evidence concerning the following matters:

    1.    <u>Evidence that Turner Uttered Forged Personal Checks in the Name of Vester Mayo After Her Hospitalization and Death</u>

The United States intends to introduce evidence that Turner uttered forged checks drawn on Vester Mayo's personal checking account after she was hospitalized and died. The evidence will show that those checks were presented to financial institutions and honored by the bank from which they were drawn. One forged check was payable to Turner himself in the amount of $8,500. Another forged check was back-dated by Turner to a date prior to Mayo's death.

The evidence of Turner's uttering of forged checks is not extrinsic to the charged crimes. Rather, it is uncharged criminal conduct that is part of the same series of transactions charged in the Indictment. The evidence shows that Turner set out from the beginning to drain the property belonging to Vester Mayo's estate, both the life insurance proceeds as well as Mayo's bank account balance. This evidence is therefore admissible as direct proof of the charged offenses, without reference to the limitations imposed by Rule 404(b). <u>See</u> <u>United States v. Morrow</u>, 2005 WL 3159572, at *4-*5 (D.D.C. Apr. 07, 2005) (unpublished).

Even if this uncharged criminal conduct were not admissible as direct evidence of the same course of conduct charged in the Indictment, however, evidence of Turner's use of forged checks drawn from Vester Mayo's personal bank account is probative of Turner's motive, intent, plan, <u>modus operandi</u>, identity, and absence of mistake regarding the charged crimes. Those issues are relevant to the elements the government is required to prove in this case. Evidence concerning additional forged checks tend to show that, from the time Mayo became incapacitated, it was Turner's intent to convert her assets to his personal use, and that he took affirmative steps to do so, including forging Mayo's signature on an $8,500 check payable to himself. The check-forging evidence also tends to show that the identity of the person who sought to obtain a forged Mayo signature on the FEGLI designation of beneficiary form was the

6

same person who forged it on her checks -- that is, defendant Turner.  Likewise, the evidence concerning Turner's back-dating of a forged check to a time prior to Mayo's death tends to show Turner's consciousness of guilt and his intent.  Furthermore, the particularly strong probative value of the evidence that Turner benefitted from forging Mayo's name on financial instruments at around the same time the charged forgery scheme occurred is not substantially outweighed by the danger that the jury would make a decision regarding the charged scheme based on the belief that Turner acted in conformity with his bad character.  A limiting instruction -- rather than exclusion -- would prevent the jury from misusing this otherwise relevant evidence.  Accordingly, the evidence of forged checks should be admitted under Fed. R. Evid. 404(b).

    2.    <u>Evidence that Turner was Convicted by Court Martial for Forgery-Related Larceny and Attempted Bribery</u>

On January 21, 1972, Defendant Turner appeared before a general court martial and was found guilty of violating Articles 121 (larceny) and 134 (attempted bribery) of the Uniform Code of Military Justice (UCMJ).  He was sentenced to dismissal from the United States Army and confinement at hard labor for one year.

The United States will present evidence that Turner's general court martial convictions resulted from his fraudulent use at the United States Army Depot, Long Binh, Vietnam, of a false Material Requisition Expedite form (MRE) in an attempt to obtain government property -- namely, a truck-load of 1,920 U.S. Army flashlights then valued at $3,340.80 -- and a gate pass that would have permitted Turner to exit the Depot with a government truck containing the stolen property.  Specifically, the government will show that Turner and an accomplice presented a falsified MRE at a Depot warehouse to obtain the load of flashlights by fraud, and again at the Depot's cargo control gate in an attempt to exit the Depot with the stolen property. The military police determined that the MRE was fabricated, and Turner was apprehended and

directed to report under escort to the Provost Marshal's office with the load. While in route, Turner offered a military police officer a bribe of $300 to release him. A general court martial was convened, and Turner was found guilty of larceny and attempted bribery under the UCMJ.[1]

The fraudulent scheme for which Turner was found guilty by general court martial mirrors the fraudulent scheme that is the subject of the Indictment in this case. In both instances, Turner fabricated government paperwork in order to obtain government property and funds under false pretenses. In both instances, Turner attempted to enlist a government official through payment of a bribe, either to obstruct and protect himself from arrest in the prior case, or to further the fraudulent scheme as charged in this case. Turner's prior court martial convictions and the acts leading to them are therefore relevant to the non-character issues in this case of his intent, knowledge, plan, identity, <u>modus operandi</u>, and lack of mistake.

Although the conduct underlying Turner's prior military convictions occurred over thirty years ago, the passage of time does not make the evidence significantly less probative of the non-character issues regarding intent and plan for which the government seeks its admission. Unlike Rule 609, which governs impeachment of witnesses with prior convictions based on the witnesses' presumed character for untruthfulness, Rules 403 and 404(b) do not include any express limitation on the age of the evidence that is sought to be admitted. Rather, the fact-specific Rule 403 balancing test applies. <u>Morrow</u>, 2005 WL 3159572, at *4.

Here, the degree of similarity between the crimes charged in the Indictment and those for which he was convicted by general court martial is so close as to be nearly identical. In both

---

[1] Counsel for defendant Turner has indicated that Turner's prior military court martial convictions may have been commuted. Despite its best efforts, the government has not been able to obtain any record suggesting that Turner's convictions were commuted, nor has defense counsel been able to provide the government with any such record to date. The government will continue to seek those records. If the government determines that Turner's convictions are in fact not valid, it will withdraw its motion regarding the convictions.

instances, Turner undertook to fabricate government paperwork and attempted to bribe public officials in furtherance of a scheme to defraud the government through false pretenses. Because of the close similarity of the conduct, the probative force of that evidence as to Turner's present methodology, plan, and intent -- all non-character issues that will likely be contested in this case -- is particularly strong. Indeed, considering the deliberation and planning necessary to the prior forgery-related scheme, that evidence is highly probative of Turner's intent, plan, and method in this case: "prior crimes involving deliberate and carefully premeditated intent -- such as fraud and forgery -- are far more likely to have probative value . . . than prior crimes involving a quickly and spontaneously formed intent -- such as assault." United States v. San Martin, 505 F.2d 918, 923 (5th Cir. 1974).

On the other hand, the age of the prior convictions does not lessen the impact of that evidence on the narrow purposes for which the government seeks to admit it in this case. See United States v. Spillone, 879 F.2d 514, 518-20 (9th Cir. 1989) ("Depending upon the theory of admissibility and the similarity of the acts . . . some remote acts may be extremely probative and relevant."). If anything, the remoteness of the prior conduct and the lack of evidence of additional prosecutions or convictions for similar fraudulent schemes in the interim would make it less likely that the jury would misuse the evidence for the improper "propensity" purpose that is the concern of Rule 404(b). For these reasons, staleness does not make the highly relevant evidence of a similar prior forgery scheme inadmissable under Rule 403, which favors admission in all but the most extraordinary cases.

## CONCLUSION

The government hereby provides notice of the above-described evidence of other crimes, wrongs, or acts, and moves the Court to rule pre-trial that this evidence would be admissible at trial either as direct evidence of the crimes charged in the Indictment or pursuant to Rule 404(b).

Dated: May 26, 2006

                                      Respectfully submitted,

                                      ANDREW LOURIE,
                                      Acting Chief

                                       /s/ Daniel A. Petalas
                                      Daniel A. Petalas
                                      DC Bar No. 467908
                                      Ann C. Brickley
                                      Trial Attorneys
                                      Public Integrity Section
                                      Criminal Division
                                      United States Department of Justice
                                      10th Street and Constitution Avenue, NW
                                      Washington, DC 20530
                                      202-514-1412
                                      202-514-3003 (facsimile)
                                      Dan.Petalas@usdoj.gov

CERTIFICATE OF SERVICE

The undersigned counsel for the government hereby certifies that he caused a true and correct copy of the foregoing to be served upon the following counsel of record by electronic mail at the addresses listed below through the automated electronic case filing system of the Court, this  26th  day of May, 2006:

James W. Rudasill, Jr., Esq.
717 D. Street, NW, Suite 310
Washington, DC 20004
rudasilljr7@aol.com
Counsel for Peter R. Turner

Nathan I. Silver, Esq.
P.O. Box 5757
Bethesda, MD 20824
nisquire@aol.com
Counsel for LaTanya Andrews

Howard Katzoff, Esq.
601 Indiana Avenue, NW, Suite 310
Washington, DC 20004
katzoffh@aol.com
Counsel for Thelma Leonard

　　　　　　　　　　　　　　　　　　　　　　　　 /s/  Daniel A. Petalas
　　　　　　　　　　　　　　　　　　　　　　　　Daniel A. Petalas
　　　　　　　　　　　　　　　　　　　　　　　　Trial Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 06-026 (CKK) |
| v. ) | |
| ) | |
| PETER R. TURNER, ) | |
| ) | ORDER |
| LATANYA ANDREWS, and ) | |
| ) | |
| THELMA LEONARD, ) | |
|       Defendants. ) | |
| _____) | |

ORDER

Having considered the motion of the United States to admit evidence pursuant to Fed. R. Evid. 404(b) concerning other crimes, wrongs, or acts of Peter R. Turner, along with the entire record in this case, the Court has concluded that the evidence described in the motion is relevant to a non-character purpose and that the probative value of that evidence is not substantially outweighed by any danger of unfair prejudice.

Accordingly, it is, this _____ day of _____, 2006,

ORDERED, that the Motion of the United States to admit evidence pursuant to Fed. R. Evid. 404(b) is GRANTED.

 

_____
Colleen Kollar Kotelly
United States District Judge