argues that the evidence against her co-defendants is substantially stronger. Leonard argues that the evidence presented against Turner and Andrews will unduly prejudice her before the jury, and that this prejudice may result in the jury convicting Leonard on evidence unrelated to her conduct. The government respectfully submits that Leonard is wrong on both grounds. Leonard has not established that Turner would in fact testify on her behalf, nor has she provided sufficient reason why it is in the interests of justice to sever the case.

    A.    <u>Defendant's Motion for Severance Should be Denied</u>

There is a strong preference in the federal system for joint trials of defendants who are indicted together. See, e.g., <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993); <u>United States v. Gbesimola</u>, 225 F.3d 753, 760 (D.C. Cir. 2000). As the Supreme Court has stated, "[j]oint trials 'play a vital role in the criminal justice system.' . . . They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" <u>Zafiro</u>, 506 U.S. at 537 (quoting <u>Richardson v. Marsh</u>, 481 U.S. 200, 209-10 (1987)). In this Circuit, joinder has been held "presumptively proper where the alleged acts are part of the same series of acts or transactions." <u>United States v. Simmons</u>, ___ F. Supp.2d ___ 2006, 02-CR-45 (RCL), WL 1217281 at * 25 (D.D.C. May 2, 2006).

Under Federal Rule of Criminal Procedure 14, severance should not be granted unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro</u>, 506 U.S. at 539. "Moreover, Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion." <u>Zafiro</u>, 506 U.S. at 538-39.

Thus, a properly joined defendant bears a "heavy burden" in seeking a separate trial, and must establish that "joinder would violate [her] fair trial rights." <u>United States v. Edelin</u>, 118 F.

8

Supp. 2d 36, 41 (D.D.C. 2000), (citing United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986); United States v. Carpentier, 689 F.2d 21, 27 (2d Cir. 1982)); see also United States v. Simmons, ___ F. Supp.2d ___ 2006, 02-CR-45 (RCL), WL 1217281 at * 25 (D.D.C. May 2, 2006) (denying severance in conspiracy case where "defendant is not entitled to severance merely because he might have a better chance of acquittal if he were tried separately").

   1.  Leonard has Not Shown that Turner Would Provide Exculpatory Testimony

Leonard alleges that if her case were severed, Turner would provide exculpatory evidence to show that Leonard signed the FEGLI form at Mayo's request and in her presence before Mayo was hospitalized in 2000. Leonard also alleges that Turner would testify that the $1,000 check was for Mr. Leonard and was not payment for fraudulently signing Mayo's FEGLI form. See Defendant's Motion for Severance ¶ 6. Leonard does not indicate whether Turner will explain why Mayo and the authorizing agency official's names were forged.

To establish a *prima facie* case for severance on the ground urged here by Leonard, the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed. Once the movant makes that threshold showing, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion. United States v. Ford, 870 F.2d 729, 731. (D.C. Cir. 1989). See also United States v. Wilson, 116 F.3d 1066, 1084-85 (5th Cir. 1997 ); United States .v Edelin, 118 F. Supp. 2d 36, 44 (D.D.C. 2000).

Leonard provided an overview of what she believes Turner would say if called to testify at a severed trial. If Leonard's representation is accurate, Turner would testify that Mayo was

9

present when the FEGLI form was signed, and that it was signed prior to Mayo's hospitalization in December 2000. According to Leonard, Turner would also deny that the $1,000 check he paid to Mr. Leonard was a payment made in exchange for the Leonards' cooperation in the conspiracy. The Court could find, therefore, that there is a bona fide need for the testimony and that the proffered testimony may exculpate Leonard in the eyes of the jury. Turner has not, however, indicated that he is willing to testify, nor has Leonard shown that Turner's claims would withstand cross-examination. Without showing that Turner will testify, Leonard cannot make a prima facie showing that Turner's testimony would actually be available at a separate trial. "The Court cannot engage in flights of fancy where a defendant can force severance of his case by asserting that his co-defendant would testify on his behalf." Edelin, 118 F. Supp. 2d at 45.

Even assuming arguendo, that Leonard could make a prima facie case for severance based upon Turner's potentially exculpatory testimony, Leonard's charges should not be severed from those of her co-defendants. In examining the remaining Ford factors, Leonard's motion fails when considered in light of the third factor - the effect of severance on judicial administration and economy.

The evidence that will be introduced to prove the fraudulent scheme will also be used to prove the conspiracy count in which Leonard is charged. As such, if severance is granted, the same witnesses will be called in order to establish the conspiracy of which all three defendants were a part. Some of the government's witnesses will travel from out-of-state, leaving behind personal responsibilities and testifying at their own inconvenience. At least one witness will be a member of Mayo's family, who will have to re-live Mayo's unfortunate death in order to provide testimony. In effect, Leonard is requesting that the Court empanel a jury to hear the same evidence, make the same evidentiary rulings, and subject witnesses to direct and cross-

10

examination on the same subject twice. This is an undue burden on the Court's and the government's resources, particularly when weighed against the *potential* testimony of a co-defendant.

      2.      <u>Leonard's Claim of Prejudicial Spillover Does Not Justify Severance</u>

Leonard also claims that she will be prejudiced by being tried along with her two co-defendants because the evidence is stronger against her co-defendants. It is insufficient for a defendant to claim that more proof will be offered at trial against other defendants, or that the defendant played a small role compared to others charged in the indictment. "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." <u>United States v. Kenny</u>, 883 F. Supp. 869, 878 (E.D.N.Y. 1995) (quoting <u>United States v. Chang An-Lo</u>, 851 F.2d 547, 557 (2d Cir. 1988)); <u>see also</u> <u>United States v. Eiland</u>, 406 F. Supp. 2d 46, 54 (D.D.C. 2005) (severance denied even though charges against co-conspirators included crimes of violence). While arguing that the government's evidence against her is "thin," Leonard fails to acknowledge grand jury testimony in which she admitted that she signed the FEGLI form as a witness to Mayo's signature when Mayo had not signed the form. The government's evidence will further show that Mayo *never* signed the FEGLI form and that, in fact, her signature, along with Mr. Lebron's, were forged. This evidence, taken with the $1,000 check paid to Leonard's husband after Turner received the FEGLI benefits, is ample evidence of Leonard's role in the conspiracy, and must be brought out in conjunction with evidence that will show Andrews' and Turner's roles in the conspiracy. Turner's and Andrews' conduct in this case is not distinct from Leonard's, nor is it substantially more egregious. Presenting all of the evidence together will not result in prejudice to Leonard, nor will the evidence confuse the jury about Leonard's relative level of culpability.

Indeed, there is ample reason why the preference for joint trials should be honored in the instant case. Leonard is charged in the conspiracy count, and the government will seek to prove that her charged conduct was committed in furtherance of the overarching conspiracy. The evidence of the conspiracy and of the three defendant's roles therein will therefore have to be admitted in a separate trial, necessitating the repetitive presentation of the same witnesses and evidence at a second trial. Furthermore, the evidence regarding the substantive bribery charge is intertwined with the evidence regarding the conspiracy to commit bribery. Thus, the government will utilize the same evidence and the same witnesses to establish each of the crimes charged in the indictment. Even if, on balance, this evidence bears out that Turner and Andrews played a larger role in the conspiracy than did Leonard, and to the extent that the evidence does not make the defendants' respective roles clear, a curative jury instruction will suffice.

Further, where allegedly prejudicial evidence against a co-defendant would be admissible against the moving defendant even at a separate trial, the movant is not entitled to severance. See United States v. Gbesimola, 225 F.3d 753, 760 (D.C. Cir. 2000) (denial of severance upheld where the same evidence would have been presented at a severed trial); United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998) (admission of bombing co-defendant's "holy war" materials did not result in prejudicial spillover where materials would have been admissible in a separate trial against the moving defendant as a member of the bombing conspiracy); United States v. Edelin, 118 F. Supp. 36, 43 (D.D.C. 2000) ("[s]everance is not appropriate merely because some co-conspirators were more active in the conspiracy, nor because some co-conspirators played a more central role"). That is precisely the situation here. Turner may be the "mastermind" of this small conspiracy, and Andrews' conduct was necessary to enable Turner to have the FEGLI form placed in Mayo's personnel folder, but it is Leonard who signed the FEGLI form as a "witness" to Mayo's signature on a form Mayo did not sign. Regardless of

12

the severity of the conduct of each defendant, the actions of the co-conspirators is relevant for the government to prove that Leonard was involved in the conspiracy, and introducing this evidence will result in no violation of trial rights to Leonard..

If the Court were to determine that the government presented evidence against Andrews and Leonard that appeared to prejudice Leonard, an appropriate jury instruction will cure any potential harm. Any risk of "spillover" prejudice arising from differing levels of culpability and proof in multi-defendant cases is remedied by judicial instructions that each defendant must be considered separately, and that the proof against each defendant must be weighed individually. "Other, less intrusive remedies such as additional jury instructions are preferred over severance." United States v. Simmons, ___ F. Supp.2d ___ , 02-CR-45 (RCL), 2006 WL 1217281 at * 25 (D.D.C. May 2, 2006) . See also Zafiro, 506 U.S. at 540-41.

In conclusion, Leonard has not satisfied the heavy burden of establishing prejudice so severe as to constitute a miscarriage of justice. Thus, her motion should be denied and the Court should issue limiting instructions at the appropriate time, if necessary.

WHEREFORE, the government respectfully requests that the Court deny the defendant's motion to suppress her grand jury testimony and Leonard's motion to sever her trial from the co-defendants.

Dated: June 16, 2006

                                      Respectfully submitted,

                                      ANDREW LOURIE,
                                      Acting Chief

                                         /s/  Daniel A. Petalas
                                      Daniel A. Petalas
                                      DC Bar No. 467908
                                      Ann C. Brickley
                                      Trial Attorneys
                                      Public Integrity Section
                                      Criminal Division
                                      United States Department of Justice
                                      10th Street and Constitution Avenue, NW
                                      Washington, DC 20530
                                      202-514-1412
                                      202-514-3003 (facsimile)
                                      Dan.Petalas@usdoj.gov