UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES,

    Plaintiff,

      v.

PETER R.  TURNER and
LATANYA ANDREWS,

    Defendants.

Criminal Action No. 06-26 (CKK)

**MEMORANDUM OPINION**
(October 24, 2006)

Currently before the Court are two motions for judgment of acquittal made pursuant to

Rules 29(b) and 29(c) of the Federal Rules of Criminal Procedure – one proffered by Defendant

Peter R. Turner, the other by Defendant LaTanya Andrews.  After a searching review of each

Defendant's Motion, the Government's Combined Opposition to Defendants' Motion for

Acquittal, the transcript of the four-day trial in this matter, and the exhibits offered in evidence

during that trial, the Court shall deny Defendant Peter Turner's Motion for Judgment of Acquittal

and shall also deny Defendant LaTanya Andrews' Motion for Directed Verdict.[1]

**I: BACKGROUND**

On January 31, 2006, Defendants Peter R. Turner and LaTanya Andrews were charged in

a three-count indictment.  The Indictment alleged that Defendant Turner, a volunteer driver for

_____

[1] Rule 29 of the Federal Rules of Criminal Procedure formerly addressed a "Motion for a Directed Verdict," but was amended in 1944 to address a "Motion for a Judgment of Acquittal." As the "change of nomenclature [did not] modify the nature of the motion or enlarge the scope of matters that may be considered," Fed. R. Crim. P. 29 advisory committee notes, the Court will consider Andrews' Motion as one properly made for a Judgment of Acquittal.

the Department of Veterans Affairs Medical Center ("DVAMC"), Indictment ¶ 2, and Defendant

Andrews, a payroll technician for the DVAMC, *id.* ¶ 1, conspired to file a forged Federal

Employees Group Life Insurance ("FEGLI") form falsely designating Turner as a one-half life-

insurance beneficiary for Vester Mayo, a fellow employee of the DVAMC and Turner's  former

girlfriend, *id.* ¶ 5, in Mayo's official personnel folder, *id.* ¶¶ 9-10.  In December 2000, Mayo

suffered a stroke, after which she lapsed into a coma and died on December 22, 2000.  *Id.* ¶ 6.

Following Mayo's death, Turner filed a claim with the FEGLI program (which is regulated and

overseen by the Office of Personnel Management ("OPM"), *id.* ¶ 4), obtaining a payment of

approximately $20,500.  *Id.* ¶ 21.  The Indictment further alleged that in return for Andrews'

assistance in the scheme, Turner paid Andrews $1,000 from the proceeds on or about February 7,

2001. *Id.* ¶ 22.

Count I of the Indictment charged both Defendants with conspiring to defraud the United

States, or to commit an offense against the United States, namely mail fraud, receiving a bribe, or

giving a bribe, *id.* ¶ 7, in order to fraudulently obtain money from the FEGLI program, in

violation of 18 U.S.C. § 371 ("Conspiracy to Commit Offense or to Defraud United States")

(Count I), *id.* ¶ 8.  The conspiracy is alleged to have operated  "from on or about December 8,

2000 through on or about January 10, 2006 . . . in the District of Columbia and elsewhere," *id.* ¶

7, and numerous overt acts in furtherance of the conspiracy are alleged in the Indictment.  *Id.* ¶¶

17-27.  In addition, the Indictment charged Andrews (Count II) and Turner (Count III) each with

one count of bribery in violation of 18 U.S.C. § 201(b) ("Bribery of Public Officials and

Witnesses").

Turner and Andrews were tried in front of a jury in a four-day trial, followed by a day of

jury deliberations.  At the conclusion of the Government's case, each Defendant moved for a

judgment of acquittal, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure,

arguing that the Government's evidence was insufficient to sustain a conviction of either

conspiracy or bribery.  Tr. at 706:20-713:24; 721:18-731:10.  After hearing the Government's

opposition to Defendants' motions, the Court reserved decision on Defendants' motions pursuant

to Rule 29(b) of the Federal Rules of Criminal Procedure, and proceeded with trial.  *Id.* at 730:6-

731:10.  Each Defendant's motion was renewed at the close of the case, *id.* at 893:8-14, and the

Court again reserved decision on the motions, *id.* at 970:21-971:3.  At the conclusion of the jury

deliberations, Defendant Turner was convicted of Count I (Conspiracy) and Count III (Bribery),

while Defendant Andrews was convicted of Count I (Conspiracy) and Count II (Bribery).

On September 10, 2006, Defendant Turner filed his Motion for Judgment of Acquittal, in

which he argued that the Government failed to establish the existence of a conspiracy between

Turner and Andrews, and that the Government did not produce evidence either that Turner

caused the forgery of the signatures on the FEGLI designation of beneficiary form or that

Andrews caused the form to be placed in Mayo's personnel file.  Turner Mot. for Acquittal at 1-

2.  On September 12, 2006, Defendant Andrews filed her Motion for Directed Verdict, in which

she argued that the Government failed to prove that Andrews had contact with the FEGLI form

or that she caused the form to be placed in Mayo's personnel file.  Andrews Mot. for Dir. Verdict

at 6-9.  The Government filed its Combined Opposition to Defendants' Motions for Acquittal on

September 26, 2006, arguing that it had "presented sufficient evidence to support the jury's

findings in every particular."  Gov't. Opp'n. at 1.  Although the Court permitted each Defendant

to file a Reply on or before October 6, 2006, neither Defendant has filed such a Reply to date.

## II: LEGAL STANDARDS

Rule 29(a) of the Federal Rules of Criminal Procedure provides: "After the government

closes its evidence or after the close of all evidence, the court on the defendant's motion must

enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a

conviction." Fed. R. Crim. P. 29(a). Rule 29(b) of the Federal Rules of Criminal Procedure

further provides that "[t]he court may reserve decision on the motion, proceed with the trial

(where the motion is made before the close of all the evidence), submit the case to the jury, and

decide the motion . . . after it returns a verdict of guilty," but "[i]f the court reserves decision, it

must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R.

Crim. P. 29(b). Finally, Rule 29(c) of the Federal Rules of Criminal Procedure provides that a

defendant "may move for a judgment of acquittal, or renew such a motion, within 7 days afer a

guilty verdict" and "[i]f the jury has returned a guilty verdict, the court may set aside the verdict

and enter an acquittal." Fed. R. Crim. P. 29(c).

Regardless of when the motion is made, the Court must deny a motion for a judgment of

acquittal when, considering the evidence in the light most favorable to the Government, the

evidence "is sufficient to permit a rational trier of fact to find all the essential elements of the

crime beyond a reasonable doubt." *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001);

*see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In ruling on a motion for a judgment of

acquittal, 'the trial court must view the evidence in the light most favorable to the Government

giving full play to the right of the jury to determine credibility, weigh the evidence and draw

justifiable inferences of fact.'" *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985)

(quoting *United States v. Davis*, 562 F.2d 681, 683 (D.C. Cir. 1977)); *United States v. Sutton*,

4

801 F.2d 1346, 1358 (D.C. Cir. 1986). This stringent standard contemplates that the ultimate

decision of guilt or innocence should be left to the jury, and that it is the province of the jury to

credit certain testimony and reject other testimony. *United States v. Davis*, 763 F. Supp. 645,

648 (D.D.C. 1991) ("Sentencing courts should therefore be wary of rejecting a jury's assessment

of witness credibility."). "When a reasonable mind might fairly have a reasonable doubt of guilt

or might fairly have none, the decision is for the jury to make." *United States v. Herron*, 567

F.2d 510, 514 (D.C. Cir. 1977) (citation omitted); *see also United States v. Bethea*, 442 F.2d 790,

792 (D.C. Cir. 1971).

However, "where the evidence viewed in the light most favorable to the prosecution is

such that 'a reasonable juror *must* have a reasonable doubt as to the existence of any of the

essential elements of the crime,' a motion for judgment of acquittal must be granted." *United

States v. Foster*, 783 F.2d 1087, 1088 (D.C. Cir. 1986) (quoting *Bethea*, 442 F.2d at 792)

(emphasis in original). "[T]he trial judge should not allow the case to go to the jury if the

evidence is such as to permit the jury to merely conjecture or to speculate as to defendant's

guilt." *Bethea*, 442 F. 2d at 792; *see also United States v. Staten*, 581 F.2d 878, 882 (D.C. Cir.

1978) (the judge must not let the jury "act on what would necessarily be only surmise and

conjecture, without evidence"). In its review of the record, the court is not to "indulge in fanciful

speculation or bizarre reconstruction of the evidence" and -- while viewing the evidence in the

light most favorable to the Government -- should "accord the [G]overnment the benefit of only

'legitimate inferences.'" *United States v. Recognition Equip. Inc.*, 725 F. Supp. 587, 588

(D.D.C. 1989) (quoting *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C. Cir. 1983)). "[I]n

order to find a legitimate and nonspeculative inference of guilt the [G]overnment must articulate

a rational basis in the evidence upon which that inference can arise." *Id.*

The evidence in question "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) (quoting *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984), *cert. denied*, 469 U.S. 1164 (1985), 470 U.S. 1027 (1985)). Moreover, "[t]here is no requirement of any direct evidence against the defendant; the evidence may be entirely circumstantial." *United States v. Poston*, 902 F.2d 90, 94 n.4 (D.C. Cir. 1990) (citing *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984); *United States v. Simmons*, 663 F.2d 107, 108 (D.C. Cir. 1979)). "No distinction is made between direct and circumstantial evidence in evaluating the sufficiency of evidence supporting a guilty verdict," *Maxwell*, 920 F.2d at 1035, "since it is 'the traditional province of the jury to assess the significance of circumstantial evidence, and to determine whether it eliminates all reasonable doubt.'" *Treadwell*, 760 F.2d at 333 (quoting *Staten*, 581 F.2d at 883). "Similarly, the government, when using circumstantial evidence, need not negate all possible inferences of innocence that may flow therefrom." *Id.* (citation omitted). As such, "[i]t is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury." *Davis*, 562 F.2d at 683 (citations omitted); *see also United States v. Durant*, 648 F.2d 747, 750 (D.C. Cir. 1981) (same). "If the evidence is such that a reasonable man may have reasonable doubt as to the defendant's guilt, the case should go to the jury." *Bethea*, 442 F.2d at 792.

### III: DISCUSSION

As each Defendant moved for a judgment of acquittal at the close of the Government's

case and again at the close of all of the evidence, the Court is required to decide each motion on the basis of the evidence at the time the ruling was reserved.  Fed. R. Crim. P. 29(b).  However, neither Defendant's motion for a judgment of acquittal relies on evidence adduced during Defendant Turner's case, nor does the Government address Defendant Turner's evidence in its Opposition to Defendants' motions.[2]  In addition, the Court's independent review of the trial transcripts and exhibits reveals that none of the evidence adduced by Defendant Turner directly undercuts any of the Government's evidence.  Rather, the Court notes that the majority of Defendant Turner's evidence is consistent with the Government's evidence of the relationships between Defendant Turner and Mayo and between the Defendants themselves.  As the same conclusion would therefore be reached as to Defendants' motions for a judgment of acquittal based on either the totality of the evidence or on the Government's evidence alone, the Court shall focus only on the Government's evidence.  The Court shall first address Defendant Turner's Motion for Judgment of Acquittal and shall then turn to Defendant Andrews' Motion for Directed Verdict.

### A.    *Defendant Turner's Motion for Judgment of Acquittal*

Defendant Peter Turner challenges his convictions under Count I (Conspiracy) and Count III (Bribery) of the Indictment.  Turner Mot. for Acquittal at 1.  With only two citations to the record and a generalized review of the evidence presented during the Government's case-in-chief, Defendant Turner's Motion for Judgment of Acquittal focuses on three arguments (1) that the Government failed to establish the existence of a conspiracy between Turner and Andrews because the Government failed to establish either the existence of an agreement or an overt act;

---

[2] Defendant Andrews did not present any evidence in her defense.  Tr. at 893:11-14.

7

(2) that the Government did not produce evidence that Turner caused the forgery of the signatures on the FEGLI form; and (3) that the Government did not produce evidence that Andrews caused the form to be placed in Mayo's personnel file.

        *1.      Defendant Turner's Conspiracy Conviction*

        *a.      The Requirements*

To establish a criminal conspiracy in violation of 18 U.S.C. § 371, the Government must establish beyond a reasonable doubt that: (1) two or more persons formed an agreement to commit an offense; (2) the defendant knowingly participated in the conspiracy with the intent to commit at least one of the substantive offenses charged; and (3) at least one overt act was committed in furtherance of the common scheme. *United States v. Wynn*, 61 F.3d 921, 929 (D.C. Cir. 1995); *Treadwell*, 760 F.2d at 333 (citing *United States v. Andreen*, 628 F.2d 1236, 1248 (9th Cir. 1980); *Pinkerton v. United States*, 145 F.2d 252, 254 (5th Cir. 1945)). "The existence of an agreement is the *sine qua non* of the statutory crime of conspiracy." *United States v. Wilson*, 160 F.3d 732, 737 (D.C. Cir. 1998). "In order to prove that an agreement existed, the government need only show that the conspirators agreed on 'the essential nature of the plan,' not that they 'agreed on the details of their criminal scheme.'" *United States v. Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996) (quoting *Treadwell*, 760 F.2d at 336). It is axiomatic that an agreement sufficient to support a conspiracy conviction can be inferred from circumstantial evidence. *Id.* (citing *United States v. Dean*, 55 F.3d 640, 646-47 (D.C. Cir. 1995)). Indeed, "it is unusual to have direct evidence of a conspiracy. Circumstantial evidence, including inferences from a development and a collection of circumstances, suffices to prove participation in a conspiracy." *United States v. Hoover-Hankerson*, 406 F. Supp. 2d 76, 83 (D.D.C. 2005).

8

> **b.** *Evidence of an Agreement Between Turner and Andrews and Evidence That Andrews Placed the Forged Form in Vester Mayo's Personnel File*

Defendant Turner argues that "[t]he trial's evidence of the existence of a conspiracy between Turner and Andrews hangs on a few slim facts." Turner Mot. for Acquittal at ¶ 4. However, by the close of the Government's case-in-chief, the Government introduced sufficient circumstantial evidence for a reasonable juror to conclude – beyond a reasonable doubt – that a conspiracy in fact existed between Defendants Turner and Andrews.

First, the evidence adduced by the Government demonstrated that the FEGLI form designating Defendant Turner as the recipient of 50% of Vester Mayo's FEGLI benefits was a forgery. Gov't. Ex. 2 (Vester Mayo Designation of Beneficiary Form). Nancy Cox, the Government's expert in forensic document examination, Tr. at 592:16-17, testified that Vester Mayo did not sign the designation of beneficiary form, *id.* at 606:13-18. Cox based this conclusion on an extensive analysis – which she explained in great detail during her trial testimony – of Vester Mayo's known signatures and the signature on the designation of beneficiary form. *Id.* at 606:13-613:8. In addition, Vester Mayo's mother, Lorenza Mayo, identified Vester Mayo's signature on the designation of beneficiary form as a forgery the first time she viewed the form. *Id.* at 437:9-16. Other aspects of the designation of beneficiary form identified it as a forgery as well. The box on the designation of beneficiary form for the signature of an authorized official at the receiving agency appears to have been signed by a personnel management specialist named "LR Lebron." Gov't. Ex. 2 (Vester Mayo Designation of Beneficiary Form). A James Lebron is, in fact, employed as a human resource specialist at the DVAMC, Tr. at 332:5-7, and is responsible for reviewing designation of beneficiary forms, *id.* at

9

336:1-7.  However, Cox testified that James Lebron "very probably did not" sign the designation

of beneficiary form in the box denominated "Signature of authorized agency official," *id.* at

618:15-20, and Lebron himself testified that he did not sign the designation of beneficiary form,

*id.* at 355:19-22.

   The designation of beneficiary form also included a number of errors – the dates on the

form were inconsistent, Lorenza Mayo's address was misspelled, Vester Mayo's social security

number was incorrect, and boxes were incorrectly checked – that further indicated the form to be

a forgery.  *Id.* at 356:14-359:16 (Lebron); 439:4-18 (Mayo).  In addition, one of the "witnesses to

signature" of Vester Mayo on the designation of beneficiary form is a Marvin Leonard.  Gov't.

Ex. 2.  However, as the Government's evidence established that Vester Mayo's signature on the

form is a forgery, it is reasonable to conclude that Leonard did not witness Vester Mayo signing

the designation of beneficiary form and that Leonard's attestation to having seen Vester Mayo

sign the form is therefore fraudulent as well.  The Government's evidence further demonstrated a

link between Leonard and Defendant Turner in the form of a $1000 check payable to Marvin

Leonard, drawn on Defendant Turner's personal checking account, and signed by Turner on July

16, 2002.  Gov't. Ex. 36 (7/16/02 Check Payable to Leonard).[3]

   In addition to establishing the designation of beneficiary form as a forgery, the

Government introduced circumstantial evidence from which a reasonable juror could conclude

that Defendants Turner and Andrews reached an agreement whereby Andrews would place the

---

[3] The Court notes that the Government's evidence did not establish why Turner wrote
Leonard a $1000 check in July 2002, however the check itself is probative of the fact that
Leonard, a purported witness to the forged designation of beneficiary form, was acquainted with
Defendant Turner.

10

fraudulent form in Vester Mayo's personnel file. First, the Government's evidence demonstrated that Defendants Turner and Andrews were acquaintances and that they associated with each other around the time of Vester Mayo's death. Lorenza Mayo saw Andrews and Turner together at Vester Mayo's home following Vester Mayo's stroke and after Vester Mayo died. Tr. at 424:15-425:6. In addition, Andrews herself told Special Agent Shantel Robinson, who investigated the matter for the OPM, that Turner was a work friend and that Andrews met Vester Mayo through Turner. *Id.* at 649:2-13.

The Government's evidence also established that, as a payroll technician at the DVAMC, Defendant Andrews had easy access to the file room in which DVAMC employees' personnel files were kept, and therefore would have been able to place the forged designation of beneficiary form in Vester Mayo's personnel file. Specifically, Lebron testified that the payroll section of the DVAMC adjoined the human resources section (where the file room was located), that the two shared a common door to the outside hallway, and that there was no door separating the two sections. Tr. at 345:7-346:15. An individual could walk directly from the payroll section to the file room and enter the file room, without having to display a badge. *Id.* Lebron also testified that the door to the file room was kept unlocked during office hours, and occasionally was left unlocked after hours as well. *Id.* at 344:23-345:2; 409:16-410:14. In addition, Defendant Andrews' Application for Federal Employment, which describes her experience working at the DVAMC, includes a bullet point indicating that, at some point during her employment at the DVAMC, she had been "[r]esponsible for pulling and filing [personnel files] in the appropriate area." Gov't. Ex. 45 at LA-084 (Andrews Application for Federal Employment).

Although DVAMC payroll technicians were not supposed to walk into the file room, Tr.

11

at 349:16-19, the Government presented several means by which Defendant Andrews could have accessed Vester Mayo's personnel file. First, Andrews could have asked a human resources employee to pull Mayo's file. Tr. at 348:17-20. Alternatively, as the file room was not under observation or guarded, Andrews could have slipped into the room during office hours. *Id.* at 349:18-19. Finally, Andrews could have accessed the unlocked file room after hours, when all human resources employees had left for the day. *Id.* 351:15-352:2. The Government likewise established that Defendant Turner, acting alone, would likely have faced difficulty placing the forged designation of beneficiary form in Vester Mayo's personnel file. Turner was a volunteer at the DVAMC, not an employee, and therefore would not have had access to the file room or even a valid reason for being in the human resources section of the DVAMC. *Id.* at 350:4-22. Moreover, even if the file room was left unlocked after hours, Turner would not have been able to access the file room because the main door to the human resources section of the DVAMC was locked at night. *Id.* at 351:8-14. Based on this evidence, a reasonable juror could easily conclude that, while Turner would have been unable to place the forged designation of beneficiary form in Vester Mayo's personnel file on his own, Andrews, given her experience at the DVAMC and her position as a payroll technician, would have known where Vester Mayo's personnel file was kept and would have had the necessary access to the file room.

The Government's case-in-chief also included evidence that on January 19, 2001, Defendant Turner received 50% of Vester Mayo's FEGLI benefits – $20,562.90 – in the form of a money market account from which Turner was able to withdraw money by writing checks on the account. *Id.* at 566:8-569:22, Gov't. Ex. 14 (1/19/01 Statement of Claim Payment for Life Insurance). Furthermore, the first check Turner drew on that money market account was a

$1,000 check to Defendant Andrews, written on February 1, 2001. Tr. at 649:20-651:1; Gov't.

Ex. 16 (2/1/01 Check Payable to Andrews). In addition, Special Agent Robinson testified that,

when she interviewed Defendant Andrews in November 2005, she asked Andrews whether she

had ever received money from Defendant Turner. Tr. at 651:2-9. Andrews initially denied ever

receiving more that $10 from Defendant Turner. *Id.* When Special Agent Robinson showed

Andrews a copy of the $1000 check, Andrews told Special Agent Robinson that she had asked

Turner to write her the check so that Andrews could show a car dealership that she had a

checking account. *Id.* at 651:10-14; 653:3-16.

When Special Agent Robinson pressed further, telling Andrews that the check would not

have provided evidence that Andrews had her own checking account, Andrews responded that

the check represented a loan Andrews received from Turner in order to purchase a car. *Id.* at

651:17-21; 653:12-18. Andrews told Special Agent Robinson that Andrews repaid Turner for

the $1000 loan in February of 2001, out of her account at the Pentagon Federal Credit Union

(formerly Citadel Federal Credit Union). *Id.* at 653:19-25; 657:7-22. However, Special Agent

Robinson was unable to find evidence of any $1000 withdrawals in Andrews' Pentagon Federal

Credit Union bank statements from the period, *id.* at 658:1-14, Gov't. Exs. 48 and 49, and

Andrews would have been unlikely to have had an excess $1000 on hand at the time, in light of

the apparently paycheck-to-paycheck financial patterns Special Agent Robinson observed in

reviewing Andrews' bank records, *id.* at 658:15-22; 687:1-692:1.

Defendant Turner is correct that the Government did not produce direct evidence that

Andrews placed the forged designation of beneficiary form in Vester Mayo's personnel file, or

that Turner paid Andrews $1000 as a *quid pro quo* for placing the form in the file. However, the

13

Government is not required to present direct evidence, and may rely solely on circumstantial evidence in establishing its case. *Poston*, 902 F.2d at 94 n.4. Here, the Government presented significant circumstantial evidence – including Andrews' access to the file room where personnel files were kept, Turner's $1000 payment to Defendant Andrews less than two weeks after receiving 50% of Vester Mayo's FEGLI benefits, and Defendant Andrews' responses to Special Agent Robinson's questions about that payment – from which a reasonable juror could infer that Turner and Andrews agreed that Turner would pay Andrews $1000 in exchange for Andrews causing the placement of the forged designation of beneficiary form in Vester Mayo's personnel file.

          *c.*      *Evidence That Turner Caused the Forgery of the FEGLI Form*

Defendant Turner argues that the government failed to establish that he caused the forgery of the FEGLI form, largely because "the government's handwriting expert could not identify Mr. Turner or Ms. Andrews as the makers of the alleged forged signature on the Designation of Beneficiary form." Turner Mot. for Acquittal at 5. Turner is correct that Cox examined Andrews and Turner's known signatures and was unable to conclude that either Defendant had written the forged signature of Vester Mayo on the designation of beneficiary form. Tr. at 622:14-623:23. Nevertheless, the Court finds that the Government adduced other, circumstantial, evidence from which a reasonable juror could conclude that Turner was involved in the forgery of that signature. Specifically, Lorenza Mayo testified that she witnessed Defendant Turner write two checks, drawn on Vester Mayo's personal checking account, and forge Vester Mayo's signature on those checks. Tr. at 428:3-430:25; Gov't. Exs. 8 and 9. In addition to examining the forged designation of beneficiary form, Cox examined four questioned

14

checks drawn on Vester Mayo's personal checking account, including the two checks Lorenza

Mayo identified as having been signed by Defendant Turner. Gov't. Ex. 21 (Cox Reports dated

6/20/01, 7/20/01 and 7/21/01). Cox concluded that all five documents were forgeries, and were

the "product of the same writer." Tr. at 605:20-606:18.

 These five documents identified by Cox as forgeries made by a single writer also include

an $8,500 check payable to Defendant Turner, and drawn on Vester Mayo's personal checking

account on December 15, 2000, after Vester Mayo had slipped into a coma. Gov't. Ex. 7. This

check provides additional evidence from which a reasonable juror could conclude that Defendant

Turner exhibited a pattern of forging Vester Mayo's signature on checks drawn on her personal

checking account, including checks totaling $1100 payable to Lorenza Mayo and a sizeable

$8,500 check to himself, while Vester Mayo was incapacitated.

 In addition to introducing evidence probative of Defendant Turner's other forgeries of

Vester Mayo's signature, the Government introduced evidence that, if Vester Mayo had not

executed a designation of beneficiary form, Defendant Turner would not have received any of

Vester Mayo's FEGLI benefits because the proceeds of her FEGLI policy would have been

distributed based on the legally dictated order of precedence. *Id.* at 360:14-16 (Lebron); 540:3-

541:7 (Polizzi); 742:5-743:4 (judicial notice of order of precedence). As Vester Mayo was

unmarried, in the absence of a designation of beneficiary form, 100% of her FEGLI benefits

would have been distributed to her parents. *Id.* Defendant Turner was therefore the only person

who stood to benefit from the forgery of Vester Mayo's designation of beneficiary form. The

Government's case-in-chief thus included evidence that Defendant Turner had a strong motive

for forging Vester Mayo's signature or being instrumental in having her signature forged on the

15

designation of beneficiary form. Coupled with the evidence that Defendant Turner forged Vester Mayo's signature in other contexts, this constitutes sufficient circumstantial evidence from which a reasonable juror could conclude that Defendant Turner caused the forgery of Vester Mayo's designation of beneficiary form.

          d.        *The Government's Proof of Defendant Turner's Intent to Commit One of the Substantive Offenses Charged*

In addition to establishing the existence of an agreement between Defendant Turner and Defendant Andrews to file the forged designation of beneficiary form in Vester Mayo's personnel file and the commission of numerous overt acts in furtherance of their common scheme (Turner's writing of the $1000 check to Andrews, Andrews' cashing of the check, and Andrews' attempts to conceal her receipt of the check during her interview with Special Agent Robinson), the Government's case-in-chief included sufficient evidence from which a reasonable juror could infer that Defendant Turner "knowingly participated" in the conspiracy with the intent to commit at least one of the substantive acts charged in the Indictment.

Testimony of the Government's witnesses, including Polizzi and Lebron, established that the FEGLI program was regulated, overseen, and paid for in-part by the Office of Personnel Management. Tr. at 332:18-333:23 (Lebron); 525:16-526:24 (Polizzi). Thus, a reasonable juror could easily have concluded that by filing a fraudulent designation of beneficiary form, Defendants Turner and Andrews intended to defraud the United States. Indeed, OPM eventually paid Lorenza Mayo and her husband the additional 50% of Vester Mayo's FEGLI benefits to which they were entitled, thus paying out a total of 150% of Vester Mayo's FEGLI benefits as a result of the fraudulently filed form. Tr. at 573:22-574:15. A reasonable juror could likewise

conclude that Turner and Andrews intended to commit mail fraud by filing the fraudulent form

based on the Government's evidence that mailings were necessary in order for Turner's claim for

50% of Vester Mayo's FEGLI benefits to be processed.  *Id.* at 567:3-568:17; Gov't. Ex. 14

(1/19/01 Statement of Claim Payment for Life Insurance).[4]

Finally, the evidence adduced by the Government was sufficient for a reasonable juror to

conclude that Defendant Turner intended to provide a bribe, the third illegal object charged in the

Indictment.  As discussed in greater detail below, the Government presented circumstantial

evidence from which a reasonable juror could infer that, while Andrews was a public official,

Turner paid Andrews $1000 to induce her to cause the filing of the fraudulent designation of

beneficiary form in Vester Mayo's personnel file.  Considering the evidence presented in the

light most favorable to the Government, and drawing all reasonable inferences from that

evidence, the Court concludes that the Government presented evidence sufficient to sustain

Defendant Turner's conviction for conspiracy.

     2.     *Defendant Turner's Bribery Conviction*

Although Defendant Turner does not raise specific arguments regarding his bribery

conviction, his Motion for Judgment of Acquittal purports to challenge that conviction as well.

Under 18 U.S.C. § 201, a person commits bribery if he or she "directly or indirectly, corruptly

gives, offers or promises anything of value to any public official . . . to influence any official

---

[4] Defendant Turner does not argue that the Government has not produced sufficient evidence of his intent to commit mail fraud; however, the Court notes that in proving an intent to commit mail fraud, the Government need only show that the use of the mails was incidental to Defendant Turner's overall scheme.  *See, e.g.*, *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) ("[T]he use of the mails need not be an essential element of the scheme.  It is sufficient for the mailing to be 'incidental to an essential part of the scheme,' or 'a step in the plot.'" (citations omitted)).

act," or to influence the such official to aid in the commission of a fraud on the United States. 18

U.S.C. § 201(b).  Furthermore, "a bribe is consummated when the defendant accepts money with

the specific intent of performing an official act in return." *United States v. Orenuga*, 430 F.3d

1158, 1166 (D.C. Cir. 2005) (internal quotation and citation omitted).  Indeed, "[t]he Supreme

Court has made it clear that the 'acceptance of the bribe is the violation of the statute, not

performance of the illegal promise.'" *Id.* (quoting *United States v. Brewster*, 408 U.S. 501, 526,

92 S. Ct. 2531, 33 L. Ed. 2d 507 (1972)).  The statute further defines "public official" to include

an employee of the United States government, as well as any person who is performing work for

or acting on behalf of the United States government, and defines an "official act" to include any

decision or action generally performed by the public official in his or her official capacity.  18

U.S.C. §201(a).

The Court concludes that the Government's case-in-chief contained sufficient evidence

from which a reasonable juror could convict Defendant Turner of bribery.  Specifically, as a

payroll technician at the DVAMC, Defendant Andrews was an employee of the United States

government.  *See* Gov't. Ex. 45 (Andrews Application for Federal Employment).  Furthermore,

Defendant Turner paid Defendant Andrews $1000 while Defendant Andrews was employed by

the United States Government.  Gov't. Ex. 16 (2/1/01 Check Payable to Andrews).  Finally, as

discussed above, the Government introduced ample circumstantial evidence from which a

reasonable juror could conclude that Defendant Turner paid Defendant Andrews the $1000 in

order to induce Andrews to file the forged designation of beneficiary form in Vester Mayo's

personnel file, thus violating Andrews' duties as an employee of the United States and aiding in

the commission of a fraud on the United States.  Defendant Turner argues that "[t]he

18

Government did not prove that Ms. Andrews did anything as a *quid-pro-quo* for the [$1000

payment];" however, the Government need not prove a *quid pro quo* in order to demonstrate that

Defendant Turner committed bribery. *See Orenuga*, 430 F.3d at 1166.  The Court therefore finds

that the Government presented evidence sufficient to sustain Defendant Turner's conviction for

bribery, and shall deny Defendant Turner's Motion for Judgment of Acquittal.

       B.     *Defendant Andrews' Motion for Directed Verdict*

      Unlike Defendant Turner, Defendant Andrews concedes that the Government has

presented sufficient evidence to establish a number of facts, including:

> that the signature of Vestor [sic] Mayo on the designation form was a forgery; that
> the signature of James Lebron, too, was forged; that Mr. Turner obtained $20,500
> in benefits from the Mayo FEGLI policy; that Mr. Turner and Ms. Andrews were
> either friends or at least acquaintances; that Ms. Andrews's [sic] employment as a
> payroll technician gave her access to VAMC personnel files; that Ms. Andrews
> received a $1,000 payment from Mr. Turner after he received the disbursement of
> FEGLI benefits; and that Ms. Andrews was a public official within the meaning of
> the bribery statute.

Andrews Mot. for Dir. Verdict at 3-4.  Defendant Andrews' Motion for Directed Verdict instead

argues that the "government's evidence failed to prove that Ms. Andrews had contact with the

form itself or that she caused its placement in the personnel file of Vestor Mayo." *Id.* at 5-6.

Defendant Andrews also appears to argue that the Government failed to prove that Defendant

Andrews participated in a conspiracy with Defendant Turner because the Government's evidence

is consistent with "Turner himself having commandeered the designation of beneficiary form;

falsely prepared it; placed it in Vestor Mayo's personnel file and profited from its payment." *Id.*

at 11.  The majority of the Government's evidence discussed above in connection with Defendant

Turner's convictions for conspiracy and bribery is equally probative of Defendant Andrews'

involvement in the conspiracy and bribery; however, the Court will nevertheless address the arguments made by Defendant Andrews in support of her motion for judgment of acquittal.

     1.     *Defendant Andrews' Conspiracy Conviction*

Defendant Andrews argues that the Government presented no evidence that Defendant Andrews "obtained the [designation of beneficiary] form for another person; possessed the form; helped prepare it; forged the signature of either Vester Mayo or James Lebron, or otherwise was involved with its placement in Vester Mayo's personnel file." Andrews' Mot. for Dir. Verdict at 6. Furthermore, while Defendant Andrews concedes that she had access to the room where personnel files were kept at the DVAMC, *id.* at 4, she argues that the Government's evidence merely establishes that she could have placed the forged form in Vester Mayo's file, but does not conclusively establish that she actually did so, *id.* at 6-9. Defendant Andrews thus fails to recognize that the Government is not required to present any direct evidence, but may support its case solely with circumstantial evidence. Indeed, because "it is unusual to have direct evidence of a conspiracy . . . [c]ircumstantial evidence . . . suffices to prove participation in a conspiracy." *Hoover-Hankerson*, 406 F. Supp. 2d at 83.

As discussed above, the Government presented ample circumstantial evidence from which a reasonable juror could conclude that Defendant Andrews caused the placement of the forged designation of beneficiary form in Vester Mayo's personnel file. Specifically, Defendant Andrews concedes that she and Defendant Turner were friends and that she had easy access to the file room where Vester Mayo's personnel file was stored. *Id.* at 4. While Defendant Andrews argues that the Government's evidence is consistent with Defendant Turner having placed the fraudulent form in Vester Mayo's personnel file himself, *id.* at 11, as noted above, the

Government's case-in-chief included evidence that Defendant Turner would likely have encountered difficulty placing the forged designation of beneficiary form in Vester Mayo's personnel file himself, Tr. at 350:4-22; 351:8-14. The Government's evidence further demonstrated that Defendant Turner paid Defendant Andrews $1000 less than two weeks after receiving 50% of Vester Mayo's FEGLI benefits, Gov't. Ex. 16 (2/1/01 Check Payable to Andrews), and that Defendant Andrews was not forthcoming about this payment when interviewed by Special Agent Robinson. Tr. at 651:2-21. Although Defendant Andrews argues that her statements to Special Agent Robinson are consistent with her receipt of a loan from Defendant Turner, Andrews Mot. for Dir. Verdict at 9-10, the evidence in question "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Maxwell*, 920 F.2d at 1035.

Defendant Andrews' arguments are therefore unavailing, as the Government's case-in-chief included sufficient circumstantial evidence from which a reasonable juror could conclude that Defendant Andrews agreed to cause the placement of the forged designation of beneficiary form in Vester Mayo's personnel file in exchange for a payment of $1000 from Defendant Turner. Furthermore, as discussed above, the Government presented evidence that Defendant Turner paid Defendant Andrews $1000 of the proceeds he received from Vester Mayo's FEGLI policy and that Defendant Andrews cashed the $1000 check within a week. Gov't. Ex. 16. Either of these acts would constitute an overt act in furtherance of the conspiracy.

Defendant Andrews does not explicitly argue that the Government's evidence failed to establish her knowing participation in the conspiracy, but does suggest that the Government has not proven a conspiracy because its evidence is consistent with Defendant Turner having

21

orchestrated the forgery of the designation of beneficiary form and having placed it in Vester

Mayo's personnel file himself.  Andrews Mot. for Dir. Verdict at 11.  However, the Court finds

that the Government adduced sufficient evidence from which a reasonable juror could infer that

Defendant Andrews "knowingly participated" in the conspiracy with the intent to commit at least

one of the substantive acts charged in the Indictment. Specifically, a reasonable juror could have

concluded that Defendant Andrews intended to defraud the United States by filing the forged

designation of beneficiary form because the Government established that the FEGLI program

was regulated, overseen, and paid for in-part by the Office of Personnel Management.  Tr. at

332:18-333:23 (Lebron); 525:16-526:24 (Polizzi).  A reasonable juror could likewise conclude

that Defendant Andrews intended to commit mail fraud by filing the fraudulent form based on

the Government's evidence that mailings were necessary in order for Turner's claim for 50% of

Vester Mayo's FEGLI benefits to be processed.  *Id.* at 567:3-568:17; Gov't. Ex. 14 (1/19/01

Statement of Claim Payment for Life Insurance).

Finally, the evidence adduced by the Government was sufficient for a reasonable juror to

conclude that Defendant Andrews intended to accept a bribe, as circumstantial evidence

demonstrated that she accepted $1000 from Defendant Turner, while employed by the United

States government, in exchange for causing the fraudulent designation of beneficiary form to be

filed in Vester Mayo's personnel file.  Considering the evidence presented in the light most

favorable to the Government, and drawing all reasonable inferences from that evidence, the

Court concludes that the Government presented evidence sufficient to sustain Defendant

Andrews' conviction for conspiracy.

      2.    *Defendant Andrews' Bribery Conviction*

22

Defendant Andrews' sole argument regarding her bribery conviction is that "if the government's proof fails to establish conspiracy, it must necessarily fail to establish bribery." Andrews Mot. for Dir. Verdict at 11. The Court has already concluded that the Government adduced sufficient evidence to sustain Defendant Andrews' conspiracy conviction, and finds that the same evidence is sufficient to sustain her conviction for bribery. Defendant Andrews concedes that she was a public official within the meaning of 18 U.S.C. § 201, and that she received a $1000 payment from Defendant Turner after he received disbursement of Vester Mayo's FEGLI benefits. *Id.* at 4. As discussed extensively above, the Government introduced ample circumstantial evidence from which a reasonable juror could conclude that Defendant Andrews accepted $1000 from Defendant Turner in exchange for causing the forged designation of beneficiary form to be filed in Vester Mayo's personnel file, thus violating her duties as an employee of the United States and aiding in the commission of a fraud on the United States. The Court shall therefore deny Defendant Andrews' motion for judgment of acquittal as to her bribery conviction.

**IV: CONCLUSION**

For the reasons set forth above, the Court shall deny Defendant Peter R. Turner's Motion for Judgment of Acquittal and shall deny Defendant Latanya Andrews' Motion for Directed Verdict. An appropriate Order accompanies this Memorandum Opinion.

Date: October 24, 2006

_____/s/_____

COLLEEN KOLLAR-KOTELLY

United States District Judge

24