IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 06-cr-026 (CKK) |
| PETER R. TURNER and ) | |
| ) | |
| LATANYA ANDREWS, ) | |
|         Defendants. ) | |
| _____) | |

GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through its undersigned counsel, and hereby files the instant memorandum in aid of sentencing as to both defendants in the above-captioned matter.

The Government has reviewed the Pre-sentence Investigation Reports prepared by the United States Probation Office and has not identified any factual inaccuracies in either Report.

I.    Background

From approximately 1998 to early 2006, defendant Peter Turner was a volunteer driver for the Veteran's Administration ("VA") hospital in Washington, D.C. During that time, he dated Vester Mayo, a nurse at the VA hospital. On December 8, 2000, Mayo suffered a stroke, was hospitalized, and remained in a coma until her death on December 22, 2000.

During Mayo's illness and following her death, Turner caused the forging of a Designation of Beneficiary Form, the form a federal employee utilizes to delineate whom, if anyone, she wishes to receive her life insurance benefits in the event of her death. The forged form falsely designated Turner as a beneficiary entitled to receive fifty percent of Mayo's life insurance benefits. Defendant Latanya Andrews, working as a Payroll Technician in the Human

Resources Department of the VA hospital, used her position to cause the forged Designation of Beneficiary form to be placed in Mayo's VA personnel file.

After the forged form was placed in Mayo's personnel file, on January 10, 2001 Turner submitted a false claim for fifty percent of Mayo's Federal Group Life Insurance ("FEGLI") benefit. Turner's claim was honored, and FEGLI established a money market account on his behalf. FEGLI provided Turner with a check book payable from the money market account in the amount of $20,500. The first check Turner wrote, dated February 1, 2001, was issued to Andrews in the amount of $1,000.

During the course of the investigation, Andrews made false and misleading statements to federal law enforcement officers. Specifically, during an interview on November 22, 2005, Andrews initially denied ever receiving money from Turner, then stated that she never received more than $10, and after being confronted with the $1,000 check, claimed that the money was a loan.

Turner, after learning that the forgery was being investigated, approached a known witness and told him that he would have gotten his guns in the old days, thus threatening a witness to the federal investigation.

On January 31, 2006, Turner and Andrews were charged in a three-count indictment. In Count One, Turner and Andrews were charged with conspiracy in violation of 18 U.S.C. § 371. In Count Two, Andrews was charged with soliciting a bribe in violation of 18 U.S.C. § 201(b)(2)(A) and (B), and in Count Three, Turner was charged with offering a bribe in violation of 18 U.S.C. § 201(b)(1)(A) and (B). Following a jury trial, Turner and Andrews were found guilty of each offense for which they were charged.

II.     Guidelines Calculations

The government agrees with the guidelines calculations recommended by the Probation Office. The government agrees that the base offense level for bribery and conspiracy to commit bribery is a level 14 pursuant to U.S.S.G. § 2C1.1(a)(1). The loss to the government, $20,500, is applicable to both defendants and results in a 4-point increase, pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(C). Additionally, for the reasons stated below, see infra Part III.A, the government agrees with Probation that Mr. Turner's attempt to intimidate a government witness warrants a two-point increase under U.S.S.G. § 3C1.1, comment 4(a).[1] Thus, the total offense level for Turner is a level 20 with a criminal history category of I, yielding an imprisonment range of 33-41 months. Andrews' guideline level is 18 with a criminal history category of I, yielding an imprisonment range of 27-33 months. Neither Turner nor Andrews filed any objection to the Pre-sentence reports.

---

[1] Although the government presented evidence during its case in chief concerning Turner's statement to Mr. Lebron, and although that conduct was charged as an overt act, we note that the jury's verdict form did not specify whether it found unanimously that Turner did indeed threaten Mr. Lebron. So long as the sentence imposed is within the statutory range, however, the Sixth Amendment does not preclude the Court from considering the fact that Turner directed a threat toward a government witness for purposes of imposing the obstruction enhancement under the Guidelines. United States v. Booker, 543 U.S. 220, 233 (2005) ("when a trial judge exercises his discretion to select a specific sentence within a defined [statutory] range, the defendant has no right to a jury determination of the facts that the judge deems relevant" (emphasis and alteration added)). Here, the statutory sentencing range is up to five years of incarceration for the conspiracy charge, and up to fifteen years for the bribery charge. Accordingly, because the application of the obstruction enhancement would not push the guidelines calculation beyond the statutory maxima, the Court may include the enhancement in its determination of a reasonable sentence.

III.      Analysis and Applicable Law

      A.      Application of the Obstruction of Justice Enhancement to Turner's Guidelines Offense Level

Section 3C1.1 of the Guidelines imposes a two-level increase in a defendant's offense level if he willfully obstructed or attempted to obstruct justice during the investigation or prosecution of the offense for which he was convicted. The commentary provides a non-exhaustive list of examples of the type of conduct to which it applies, including "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1(4)(a).

The presentence report recommends an upward adjustment of two levels for obstruction of justice based on the testimony of a witness called by the government, James LeBron. LeBron was a human resources specialist in the personnel office of the VA, whose name was forged on the FEGLI Beneficiary of Designation form that was the basis for Turner's fraudulent claim. Mr. LeBron testified that Turner approached him after Turner had become aware that he and his claim for half of Mayo's FEGLI benefit were being investigated by federal agents. According to Mr. LeBron, Turner stated words to the effect that he was very disturbed about the on-going investigation and, in the old days, would have gotten his guns. See Trial Tr. at 376-77 (Testimony of James LeBron).

By its terms, the obstruction adjustment applies not only to actual intimidation or successful threats, but also to mere attempts to intimidate, whether by direct or indirect means. U.S.S.G. § 3C1.1(4)(a). In this instance, Turner's threatening statement was a calculated attempt to intimidate LeBron, regardless of whether it did so: in a single communication Turner invoked the fact of the investigation, his distress over it, and his capacity, at least, for a violent reaction to it. The statement naturally would cause a potential witness to reflect on his or her safety should

4

they cooperate in the investigation or testify against Turner. Accordingly, the government agrees with the Probation Office that the two-level obstruction of justice enhancement should apply to Turner's total offense level.

### B. Application of the Section 3553 Sentencing Factors

In the wake of United States v. Booker, federal sentencing is now governed by 18 U.S.C. § 3553(a), which states that district courts "shall consider" several sentencing factors. 543 U.S. 220 (2005). In addition, the Supreme Court in Booker made the Guidelines sentencing range a required consideration, see § 3553(a)(4); but Booker "permits the court to tailor the sentence in light of other statutory concerns as well." Booker, 543 U.S. at 220.

The Section 3553(a) factors firmly support a sentence within the Guideline range. The first factor is the nature and circumstances of the offense and the history and characteristics of the defendant. Turner obtained a FEGLI form and then sought the assistance of others in ensuring that the form was sufficiently complete to enable him to receive a payout from the fraud. Andrews, who the evidence showed was aware of Vester Mayo's medical status, then ensured that the scheme was in place by helping Turner introduce the forged form into Vester Mayo's personnel folder. Without Andrews' access to the personnel office and its file room, and her willingness to assist Turner, the scheme could not have been completed without significantly greater risks to its success. Turner then set the fraud into motion by submitting his false claim for the life insurance benefits. Accordingly, each defendant's participation was critical to the success of the conspiracy.

The next item to be considered under Section 3553(a)(1) is the history and characteristics of the defendant. While Turner's most relevant criminal behavior occurred in the 1970's, the forgery scheme he carried out then by taking advantage of his inside access to and knowledge of the workings of the government's requisition program is similar in kind to the forgery scheme he

5

pursued against FEGLI and the Mayo family, in which he used his and his accomplice's inside status, access, and knowledge of the FEGLI program to commit the fraud. Turner's conduct therefore has a recidivist flavor to it. The government concedes that Andrews' criminal history is minimal.

The third factor is the need to reflect the seriousness of the offense and to promote respect for the law. Turner and Andrews manipulated the FEGLI program for their own gain, undermining confidence in a program that countless federal employees rely upon to disburse life insurance benefits to the people that they intended would receive them. Furthermore, both Andrews and Turner showed disrespect for the legal system during the course of the investigation. According to the testimony of Lorenza Mayo, during her daughter's illness and following her death, Turner wrote checks from Vester Mayo's bank accounts, payable to himself and again forging Vester's name. This is further evidence of Turner's lack of respect for the law and his systematic effort, of which the FEGLI scheme was a part, to drain the resources of the estate of Vester Mayo and minimize the amount her family would receive following her death. Later, after learning of the investigation, Turner twice approached Mr. LeBron, a witness whose name was forged on the fraudulent beneficiary form, once making obvious threats about Turner's possibly violent reaction to the investigation. Likewise, when she voluntarily submitted to an interview with federal agents, Andrews repeatedly lied to the agents in an effort to cover up her involvement in the scheme. Accordingly, this third factor also weighs in favor of a sentence within the sentencing guidelines range.

The fourth factor is the need to deter criminal conduct. The public has a compelling interest in deterring crimes involving public officials and misconduct that takes place at public institutions. Turner and Andrews conspired to abuse Andrew's inside access to the human resources section of the VA hospital. Punishment within the guidelines range would accordingly

6

deter other public employees who, as a consequence of their government employment, are presented with similar opportunities to commit fraud and abuse government programs.

The fifth factor, the need to protect the public, is served by sentencing these defendants within the guideline range.

The sixth factor, the need to provide defendants with rehabilitative or other training or medical care, can be accomplished while sentencing within the guideline range. The Federal Bureau of Prisons ("BOP") has numerous rehabilitative and training programs for its inmates. The BOP is also mandated by law to provide appropriate medical care to those inmates who require special treatment.

Finally, the seventh factor is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar offenses. In this case, there is no issue with respect to sentencing disparity.

IV.    Sentencing Recommendation

The government recommends that Turner be sentenced at the middle of the applicable guideline range, and that Andrews be sentenced at the low end of her range. Turner has shown no remorse or acceptance of responsibility and, during the course of this investigation, threatened at least one probable witness. Further, in order to carry out his criminal scheme, Turner took advantage of the sudden illness and death of Vester Mayo, his girlfriend who apparently trusted him, as well as her vulnerable family and elderly parents during their time of crisis. Although the Mayo family eventually did obtain full recompense from FEGLI, that payment does not excuse nor does it mitigate Turner's criminal behavior. For these reasons, the government recommends that Turner be sentenced to a period of incarceration falling within the middle of the guideline range.

As to Andrews, the evidence demonstrates that she was not the principal organizer or beneficiary of the criminal scheme, and the monetary benefit that she did receive as a result of her participation in the conspiracy was minimal. Nonetheless, her assistance was crucial to the success of Turner's criminal plan, and she has demonstrated no remorse for her conduct or the harm the conspiracy inflicted upon the Mayo family following the sudden and unexpected death of Vester Mayo, or for the disruption of the important governmental function the FEGLI system was intended to provide federal employees, herself included. Accordingly, the government recommends that the court impose a sentence of incarceration for Andrews within the guideline range, but at the low end of that range.

DATED: January 26, 2007

                              Respectfully Submitted,

                              EDWARD C. NUCCI
                              Chief, Public Integrity Section


                                /s/
                              DANIEL A. PETALAS
                              ANN C. BRICKLEY
                              Trial Attorneys
                              U.S. Department of Justice
                              Criminal Division
                              1400 New York Ave., NW, Suite 12100
                              Washington, DC 20005
                              (202) 514-1412
                              (202) 514-3003 (facsimile)
                              dan.petalas@usdoj.gov
                              ann.brickley@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2007, a copy of the foregoing was served electronically on the following counsel:

James W. Rudasill, Jr., Esq.
717 D. Street, NW, Suite 310
Washington, DC 20004
rudasilljr7@aol.com
Counsel for Peter R. Turner

Nathan I. Silver, Esq.
P.O. Box 5757
Bethesda, MD 20824
nisquire@aol.com
Counsel for LaTanya Andrews

   /s/
Daniel A. Petalas
Trial Attorney